## REUBEN W. ROPES & others *vs.* GEORGE LANE.

If a dealer in fish has agreed to sell to a purchaser all of a certain kind that he should pack during a season, at the market prices, and, after a sale and delivery of a considerable quantity, executes and delivers to him a bill of parcels of a quantity more, describing the same, and inserting the prices which they have fixed, upon or in anticipation of the arrival of the fishing vessels, and accordingly fish of the same kind described in the bill of parcels, though less in quantity, are stored in warehouses of the vendor, under direction of the purchaser, and the warehouses are filled with them, and the fish prior to being stored are inspected, marked and made ready for immediate shipment, the sale is complete and the title passes, even as against subsequent purchasers, although the quantity thus stored is not then ascertained nor the bill settled.

If, under such a general agreement as above recited, all the fish on hand at a particular time, in warehouses or on a wharf, are exhibited to the purchaser, and the prices for the particular kinds have been fixed, upon or in anticipation of the arrival of the fishing vessels, and the fish have been inspected, marked and made ready for immediate shipment, and they are all delivered to the purchaser with intent to complete the sale, and it is agreed that they shall be stored where they are for a time by the vendor at a particular price, the sale is complete and the title to the whole of the fish passes, as between the parties, although by mistake bills of parcels which are executed to exhibit the transaction omit to include a portion of them, and the bills are not then settled.

REPLEVIN of certain barrels and packages of mackerel. After the former hearing in the case, reported in 9 Allen, 502, the case was recommitted to the auditor, who made another report, and the facts found by him, which are material to be stated, in addition to those stated in 9 Allen, 502, are as follows:

By the original agreement of the plaintiffs, made in September 1862, to take all of the mackerel which Wonson & Brothers should pack that year, the prices were " to be according to the market prices for the same qualities and grades at the dates of the arrival of the several vessels with their fares." "And as the different vessels arrived, and at times in anticipation of their arrival, upon the receipt of advices, the prices were ascertained and agreed by the parties upon the fares brought or expected, and upon their arrival the several fares of mackerel were sorted and packed by or under the superintendence of S. G. Wonson, one of the firm of Wonson & Brothers, and by him inspected and branded, he being an inspector of mackerel, and made ready for market or shipment." " Towards the end of the fishing season, and before the mackerel were stored in the warehouses, the plaintiff Ripley Ropes gave direction to Wonson Brothers, being then together, to have the barrels of No. 1 mackerel and certain other smaller packages which he named stored in the warehouses until the warehouses should become full; and at the same time gave direction as to the disposition of the remainder after filling the warehouses, that they should be placed in the sheds and other places upon the premises properly secured, the most valuable to be stored in the safest places. To this the Messrs. Wonson assented, and G. F. Wonson gave order to have the mackerel stored in accordance, and the mackerel were accordingly rolled into the warehouses by or under the superintendence of said S. G. Wonson, he at the same time understanding and intending the same to be done for Mr. Ropes, and having no knowledge of any request or agreement by or with any other person in relation thereto. The precise time does not appear when Mr. Ropes gave this direction and this agreement as to the storing of the mackerel was made, but it was about the time the parties began to put the mackerel into the warehouses.

which was at the last of October or first of November, and at
the latest was before the 10th of November, which was the date
when the warehouse called the ' old store ' was full.   The ware-
houses were all filled by or before the 20th of November, and
during this time the plaintiff Ripley Ropes was in attendance
from time to time overlooking the operations, and saw that the
mackerel were stored as he had directed and that the warehouses
were filled, and no other form of delivery or acts of ownership
were had or done up to this time, other than as above stated."
"All the barrels and other packages of mackerel, before being
put into the warehouses or stored on the premises, were properly
branded or marked with the inspector's mark, and were in all
respects ready for immediate shipment, and from the 20th of
November to the time of the service of the writ in this action
the warehouses remained closed and without change or diminu-
tion of their contents."   The bills rendered to the plaintiffs enu-
merated a much larger quantity of No. 1 bay mackerel than
were stored in the warehouses.

At the time of the agreement of Garland, referred to in the
former report of this case, for storage of the mackerel bargained
for by him, which at the earliest was on the 15th of November,
the sale and delivery to the plaintiffs of the mackerel stored in
the " old store " was fully complete; " and as to the remainder,
stored in the middle and western fish-house, at the time of his
said agreement on the 15th of November the delivery of the
same to the plaintiffs had been commenced and was continued
without change to its completion, and no part of the same was
delivered to Garland ; and further, the agreement for storage
made by Garland, as shown by the written storage receipts
taken by him, was for storage of the mackerel on the premises
of said Wonson & Brothers, and there were on the 21st of said
November stored on the premises aforesaid, and within the terms
of his storage receipts, a larger number of No. 1 bay mackerel
than is enumerated in the said storage receipts, to wit, not less
than eleven hundred and fifty-three barrels, and no part of the
same was separated or designated as the property of Garland.
And on the first day of December 1862 the plaintiffs received

from Wonson & Brothers two bills which were said to contain an enumeration of all the mackerel on their wharves and premises not already included in any former bill to them, and which from an examination of the packer's books appeared to include all that had not already been billed to the plaintiffs. And these two bills were accepted by the plaintiffs as containing an enumeration of all the parcels not included in any former bill to them; and afterwards, on the 19th of December, the plaintiffs settled and paid the same by a settlement of their account for goods and cash furnished to said Wonson & Brothers, by which it appeared that said Wonson & Brothers had been overpaid for all the mackerel billed by them to the plaintiffs. And at the same time the plaintiff Ripley Ropes with G. F. Wonson went upon the wharf, Wonson opened the doors of the warehouses, but no entry was made, or any count of the contents; and having seen the condition of the warehouses and the barrels on the wharf not housed or covered, Ropes agreed with Wonson that the mackerel should be stored during the winter in the warehouses and on the wharves, and that the plaintiffs should pay to Wonson & Brothers twelve and a half cents per barrel for storage. Ropes thereupon directed Wonson as to piling and rolling the barrels upon the wharf, under cover and out of the way of frost, so that there might be no hindrance from that source to shipments of the mackerel in the spring. And I find that on the said 19th day of December there was sufficient delivery to the plaintiffs of all the mackerel then on the premises that had not been passed to them before that time, and that the mackerel then on the premises were the same as were taken by the officer on the replevin writ in this action."

" The quantities of shore and bay mackerel actually sold are to be ascertained only from the testimony of parties acquainted with the trade, who on inspection of the bills determined the kind intended to be described, by inference from the price, or from the recollection of the parties as to the prices paid; and on comparing the bills thus explained by this testimony with the officer's return and the appraisement therewith, after deducting from the enumeration in the bills the amounts taken away,'

Ropes & others *v.* Lane.

they were found not to correspond exactly with the mackerel on hand and delivered to the plaintiffs, being more of some kinds and less of others, and there was no satisfactory evidence from which the exact number could be stated of either bay or shore mackerel, of either grade or number. The mackerel were all described in the bills as No. 1, No. 2, No. 3, &c., without reference to the distinction between shore and bay, and were so sold " The custom of the trade in regard to these discrepancies between the enumerations in the bill and the packages found to have been delivered is as follows : If a greater quantity of mackerel is actually delivered of a particular number or grade than is specified, the price is fixed upon such excess according to the market value at the time the mackerel were taken ; if the excess is merely of certain packages without increasing the quantity of mackerel, as two half barrels instead of one whole one, the purchaser pays the difference in the cost of the packages only, the price for the mackerel remaining the same. And such had been the uniform course of dealing between the plaintiffs and Wonson & Brothers, but nothing was said upon the subject at the time these mackerel were bargained for or the bills rendered. And upon these facts I find and report that there was on the 19th day of December aforesaid a complete sale and delivery of all the mackerel upon the wharves and in the warehouses of Wonson & Brothers to the plaintiffs, and of every package and parcel not previously sold and delivered ; and that by the sale and delivery at that time and previously, as hereinbefore stated, the plaintiffs acquired the title to all the mackerel taken by the officer upon the replevin writ in this action."

The same auditor afterwards made a further report, as follows :

" The trial having been suspended for a more full report as to certain facts in relation to a particular bill settled November 24th 1862, a copy of which is annexed and marked " Bill No. 9," having heard the parties, I submit the following : That all the No. 1 bay mackerel which are enumerated in any of the bills from Wonson & Brothers prior to this bill had been taken and

shipped by the plaintiffs on or before the 11th of November which was the date of their last shipment of that description of mackerel from the wharf of Wonson & Brothers; that the eight hundred and thirty-one barrels of No. 1 bay mackerel claimed by the Messrs. Chandler & Trull and Kittredge & Co. are a portion of the twelve hundred barrels of No. 1 bay enumerated in said bill; that the said bill was rendered to Ropes on or about the 10th of November, the prices of the mackerel having been fixed before, on the arrival of the different vessels, as stated in the report; that at the time he received said bill the parties from their knowledge of the business and observation of th proportions of the different kinds and qualities of mackere. packed out from the different fares that season, had satisfied themselves that there were upon the premises the number of mackerel of the kinds and qualities billed to the plaintiffs, and probably more, but the plaintiffs took no means to ascertain if the number billed to them had been actually inspected; that at the time Ropes received said bill he gave directions as to the storing in the warehouses, &c., as is stated heretofore in the report already submitted; that this bill was not settled until the 24th of November, at which date a settlement of accounts [was had], including this and several other bills of mackerel, one of which, with a bill of codfish also included in said settlement, had been taken and shipped by the plaintiffs on the 11th of said November; and that upon this settlement there was found due from the plaintiffs to Wonson & Brothers a balance of $2321.62, for which the plaintiffs gave their due-bill, as was the custom of the parties in adjusting their accounts and settling the balance found due on either side from time to time."

(Bill No. 9.)

" East Gloucester, Nov. & Oct. 1862.

Messrs. R. W. Ropes & Co.

Bought of Geo. F. Wonson & Bros., Dealers in Dry and Pickled Fish, also Choice Family Groceries

| | | | |
|---|---|---|---|
| 600 bbls. | No. 1 mackerel, | $8 | 4800.00 |
| 177 " 1 qr. No. 2 " | | $6 | 1063.50 |

Ropes & others *v.* Lane.

| | | | |
|---|---|---|---|
| 50 bbls. lge No. 1 mackerel, | $13½ | 675.00 |
| 600  " 1 half 1 qr. No. 1 | $10 | 6007.50 |
| 171  "              2 | $8 | · 1368.00 |
| Inspection & | | 160.72 |
| | | 14,074.72 |

Rc. Pt.        G. F. Wonson & Bros.
Gloucester, Nov. 24th, 1862."

At the trial in the superior court, before *Ames*, J., the plain= tiffs read the auditor's report, and offered no other evidence. The defendant thereupon asked the court to instruct the jury as follows :

" 1. As matter of law, the facts found and reported by the auditor, upon which he founded his conclusions, are not suffi- cient in law to authorize a verdict for the plaintiffs for the whole of the property replevied.

" 2. The facts found and reported by the auditor, upon which he arrived at the conclusion that the different articles claimed by the plaintiffs in replevin were delivered to them by the original owners are not sufficient, as matter of law, to authorize the jury to find a delivery to the plaintiffs, as against the right and title of Kittredge & Co. and Chandler & Trull or the defendant.

" 3. The facts found and reported by the auditor, as matter of law, are sufficient to require the jury to find that the No. 1 mackerel bargained and sold to Garland for Kittredge & Co. and Chandler & Trull, and for which said Garland took of the original owners the two storehouse receipts annexed to the au- ditor's report, were in the three storehouses named in the audi- tor's report, and were delivered so as to pass the title thereto to said Kittredge & Co. and Chandler & Trull, as against the plaintiffs.

" 4. The facts found and reported by the auditor, upon which he arrived at his conclusions as to the title to the property re- plevied, as matter of law, require the jury to find a verdict for the defendant for eight hundred and thirty-one barrels of No. 1 bay mackerel stored in the three storehouses named in the audi- tor's report.

" 5. Upon the facts found and reported by the auditor, and upon which he arrived at his conclusions as to the title of the property replevied, if the court should rule that the title of the plaintiffs in replevin was good and sufficient to entitle them to recover the eight hundred and thirty-one barrels No. 1 bay mackerel stored in the three storehouses named in the auditor's report, as against the defendant and the claim and title of Kittredge & Co. and Chandler & Trull, then as matter of law the defendant would be entitled to a verdict for the remainder of No. 1 bay mackerel stored on Wonson & Brothers' premises, and replevied by the officer in this case.

" 6. Upon the facts found and reported by the auditor upon which he arrived at his conclusions in reference to the title to the property replevied at the time it was taken in replevin, the title and right of possession of Kittredge & Co. and Chandler & Trull to the eight hundred and thirty-one barrels of No. 1 bay mackerel stored in the three storehouses named in the auditor's report, as matter of law, was good and valid as against the title of the plaintiffs and entitled the defendant to a verdict for said eight hundred and thirty-one barrels.

" 7. Upon the facts found and reported by the auditor, upon which he based his conclusions, the plaintiffs are not and the defendant is, as matter of law, entitled to a verdict for the excess of packages of mackerel replevied in this suit over and above those described in the plaintiffs' bills of sale referred to in the auditor's report."

The plaintiffs insisted that the case be submitted to the jury upon the auditor's report, as *prima facie* evidence, to be passed upon by the jury, with instructions as to what in law constitutes sale and delivery.

The judge declined to give the instructions asked for by the defendant, but did instruct the jury that upon the auditor's report they were authorized to find for the plaintiffs for all the property replevied in their writ. The defendant thereupon offered no evidence, and did not argue the case to the jury, and the jury found a general verdict for the plaintiffs. The defendant alleged exceptions.

*J. G. Abbott & L. Child,* for the defendant.

*J. W. Perry & S. B. Ives, Jr.,* for the plaintiffs.

CHAPMAN, J.   At the former hearing of this case, (see 9 Allen, 502,) it appeared that a sale and delivery of certain barrels of No. 1 mackerel had been made by Wonson & Brothers to Garland, as the agent of other parties, which was completed on the 21st of November 1862.   The case was recommitted to the auditor to report as to certain facts.   One of the matters to be considered was, whether any of these same mackerel had been sold and delivered to the plaintiffs prior to that date.   It there appeared that the agreement made by the plaintiffs with Wonson & Brothers in September 1862, for the purchase of all the mackerel that Wonson & Brothers should pack that year, was executory, and did not pass the property of the No. 1 mackerel in question.   The further report finds that these mackerel are enumerated in a bill of parcels annexed to the report as " No. 9."   This bill was rendered to the plaintiffs on or about November 10th, the prices of the mackerel having been fixed before, on the arrival of the different vessels, as stated in the report.   It is further found that from their knowledge of the business and observation of the properties of the different kinds and quantities of mackerel packed out from the different fares that season, the parties had satisfied themselves that there were upon the premises the number of mackerel of the kinds and quantities billed to the plaintiffs, and probably more, but the plaintiffs took no means to ascertain if the number billed to them had been actually inspected.   One of the plaintiffs then gave directions as to storing them in the warehouses, but the bill was not settled till November 24th.

Upon the principles stated in our former opinion, no mackerel would pass to the plaintiffs on the 10th of November that had not then been inspected, and were not in some way delivered, for the inspection was to precede the delivery.   The payments did not constitute a delivery, for they were advances designed to be made beforehand.   But the report further finds that by or before November 20th the warehouses were all filled by Wonson & Brothers in conformity with the directions of one of the

plaintiffs; that one of the plaintiffs was in attendance and saw them stored as he had directed; that before they were thus stored they were inspected and marked, and were in all respects ready for immediate shipment. It thus appears that as to these No. 1 mackerel Wonson & Brothers had completed everything which was to be done on their part before the 21st of November, and that the plaintiffs had them in their possession, and also a bill of sale of them. A settlement of accounts remained to be made. This was done on the 24th of November, but the sale and delivery was not delayed till that time. It thus appears that this sale of the No. 1 mackerel to the plaintiffs was completed prior to the sale to Garland.

The report also states some new facts in respect to the mackerel not sold to Garland, and not included in any of the bills of sale. On the first of December two bills of parcels were made which were then said to contain an enumeration of all the mackerel on the wharves and premises of Wonson & Brothers not included in any former bill to the plaintiffs, and from an examination of the packer's books this appeared to be the fact. They were accepted by the plaintiffs as such. On the 19th of December the plaintiffs settled their account with Wonson & Brothers, having overpaid the bills. The parties then went upon the wharf; one of the Wonsons opened the doors of the warehouses; one of the plaintiffs saw the condition of the warehouses and the barrels on the wharf not housed or covered, and it was agreed that the mackerel should be stored during the winter in the warehouses and on the wharves for a certain price agreed. All the barrels had then been inspected and branded, and were ready for immediate shipment. There was .hus an actual delivery to the plaintiffs of the whole of the mackerel under an agreement for the purchase of the whole, and the intent of the parties was to complete the sale of the whole. The only defect in the transaction was that the bills of parcels did not enumerate all the articles that had been thus sold and delivered; and, though money enough had been ad· vanced to pay for the whole, yet the payment had been unad justed. These defects were the result of mistake, and not of

intention. According to the principles stated in *Macomber* v *Parker*, 13 Pick. 175, and *Riddle* v. *Varnum*, 20 Pick. 280, the jury were authorized to find upon these facts that all these mackerel were then sold and delivered to the plaintiffs, so that as between the parties, they then became the property of ·the plaintiffs, notwithstanding the errors in the bills of parcels.

*Exceptions overruled.*